IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN W. LONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-177-SM |
| | ) |
| ANDREW M. SAUL, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Stephen Long (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 14, 18.[1] After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

# I. Administrative determination.

## A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 18-31; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had severe degenerative disc disease of the lumbar and cervical spine;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] for light work with various additional restrictions;

(4) could not perform his past relevant work;

(5) could perform jobs that exist in substantial numbers in the national economy, such as garment sorter, housekeeper and dresser; and thus

(6) had not been under a disability as defined by the Social Security Act from March 7, 2016 through May 4, 2018.

AR 23-31.

---

[2]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision here. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). The issue here is a legal one, so the Court's review is de novo. *Parker v. Comm'r*, 772 F. App'x 613, 615 (10th Cir. 2019).

### B. Issue for judicial review.

Plaintiff argues the ALJ "improperly rejected and weighed" his treating doctor's opinion, resulting in legal error. Doc. 19, at 4. The court disagrees.

## III. Analysis.

### A. Opinion evidence.

The ALJ was required to consider all the medical source opinions regarding Plaintiff's claimed impairments. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he] receive[s].").

Under § 404.1527(c)(2),

> [i]f [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Conversely, "if the [treating physician's medical] opinion is deficient [because it is not well-supported or is inconsistent with other substantial evidence in the record], then it is not entitled to controlling weight." *Id.*

"Unless [the ALJ] give[s] a treating source's medical opinion controlling weight . . ., [the ALJ will] consider [six regulatory] factors in deciding the weight . . . [to] give to any medical opinion," § 404.1527(c), including a treating source's opinion. In other words, "resolving the controlling weight issue does not end [the court's] review." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted). Instead, if the ALJ determines the treating source's opinion is not entitled to controlling weight, the ALJ must consider the regulatory factors in § 404.1527(c)(2)-(6) to determine what weight to assign to the opinion.

> Those factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole;

5

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (internal quotation marks omitted).

So, an ALJ must either give controlling weight to a treating physician's opinion or "articulate[ ] specific, legitimate reasons for his decision, finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record." *Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018) (quoting *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and quotation omitted)).

### B. The weight the ALJ ascribed to Dr. Switzer's opinion.

The ALJ made the following findings pertaining to Dr. Seth Switzer:

> The claimant's physician, who he had seen 4 times over an 18 month period, completed a medical source statement on the claimant's behalf (Exhibit B13F). The report indicated that the claimant would be able to sit for 30 minutes, stand for 15 minutes, need to sit in a recliner/lay in a bed for 3 hours per day, stand or walk for less than 2 hours per day, sit for between 2 to 4 hours per day, and need to shift from sitting to standing every 15 to 20 minutes. The report also indicated the claimant could lift only 10 pounds and should avoid all stooping, crouching, kneeling, or climbing. It indicated the claimant would be about 75% productive and would be absent 3 times per month.
>
> Unfortunately, this opinion is inconsistent with the record and afforded little weight. The objective evidence it cites to indicated only minimal degenerative changes that fail to support the alleged limitations. Based upon the evidence, other physicians have concluded the claimant retained the ability to perform

6

medium level work (Exhibits B3A, B5A). These physicians cited to the lack of objective evidence supporting the allegations, the relatively normal physical examinations, and the inconsistencies between the claimant's allegations and the medical evidence. The opinions are given significant weight, but the undersigned finds that the claimant's allegations warrant the benefit of the doubt such that a light-level residual functional capacity would be more appropriate.

AR 28.

### 1. The evidence of record for the twelve-month period before Plaintiff's claimed March 7, 2016 onset of disability.

Plaintiff reported to the emergency room two days after he was involved in a car wreck in late March 2016. *Id.* at 27, 354-60. The attending physician, Dr. Jarrod Mueggenborg, reviewed Plaintiff's x-rays and discussed Plaintiff undergoing an MRI of the thoracic and lumbar spine. *Id.* at 360. The ALJ observed that the x-rays "returned negative other than mild degenerative changes." *Id.* at 27, 362. The ALJ also noted Plaintiff received a diagnosis of a back sprain/strain. *Id.* at 27.

Plaintiff followed up with Dr. Switzer a few days later, establishing care with him as a new patient. *Id.* at 27, 384. As the ALJ observed, Dr. Switzer noted Plaintiff did not appear to be in acute distress, despite complaints of extreme pain. *Id.* at 27. The ALJ also noted (1) Plaintiff's physical examination showed a normal range of motion for his neck, back, and extremities and he walked with a normal gait; (2) the only noted abnormalities

7

were self-reported; and (3) Plaintiff underwent the MRI in early April, which showed "minimal to mild degenerative changes, with mild canal stenosis." *Id.* at 27-28, 387.

Plaintiff visited Dr. Bryan Peck in November 2016, related to his application for disability benefits. *Id.* at 28, 399. The ALJ discussed that Dr. Peck noted Plaintiff's normal range of motion with the exception of his back, shoulders and hips. *Id.* Plaintiff also showed back pain "weakness with heel walking and straight leg test was positive while sitting down bilaterally"; "diffuse tenderness to the lumbar spine upon palpation"; "[u]pper and lower extremity range or motion is normal; and that his "[b]ack and neck range of motion are normal with no pain on light palpation." *Id.* at 400; 28.

In a January 2017 visit with Dr. Switzer, Plaintiff complained of increased left-side low back pain, and complained his Norco prescription was lasting only about a week. *Id.* at 28, 409. The ALJ noted Dr. Switzer's exam "returned normal other than pain upon palpitations to the lumbar spine." *Id.* at 28.

In December 2017, Dr. Switzer completed an RFC questionnaire. *Id.* at 413-14. As the ALJ noted, Dr. Switzer reported he saw Plaintiff four times over the last year-and-a-half; his diagnosis was chronic back pain, the MRI shows disc bulge at L3-L4 and L4-L5 and mild canal stenosis; and that Plaintiff was on chronic opioid therapy. *Id.* at 28, 413. As to Plaintiff's limitations, Dr.

8

Switzer noted Plaintiff could sit for only thirty minutes at a time (and between three and four hours during an eight-hour working day) and stand for fifteen minutes at a time (and stand or walk less than two hours out of an eight-hour working day). *Id.* He indicated Plaintiff would have to either sit in a recliner or lie down each day and must use an assistive device while standing/walking. *Id.* Further, Plaintiff would require at-will shifting from sitting, standing, or walking; would require unscheduled breaks of fifteen-twenty minutes each day; would miss on average three days of work per month; can never lift over twenty pounds and could occasionally lift ten pounds or less. *Id.* at 28, 413-14.

### 2. The ALJ's weighing of Dr. Switzer's opinion.

Here, the ALJ implicitly declined to give Dr. Switzer's opinion controlling weight. Because the court can tell the ALJ declined to give controlling weight to this opinion, the court moves on to the ALJ's consideration of the regulatory factors. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

The record shows the ALJ listed and adequately considered the 20 C.F.R. § 1527 factors. AR 25-29. The ALJ noted Plaintiff's treatment history with Dr. Switzer (four visits over approximately eighteen months) and that Dr. Switzer was Plaintiff's treating physician. AR 28;[3] *see Robinson v. Barnhart*, 366 F.3d

---

[3] The medical evidence before the court shows a March 2016 visit and a January 2017 visit to Dr. Switzer. AR 384, 409. Dr. Switzer completed the RFC questionnaire in December 2017, but the record is unclear as to whether or not Plaintiff was present. *Id.* at 413-14. The ALJ gave the benefit of any

9

1078, 1082 (10th Cir. 2004). The ALJ also considered whether Dr. Switzer's opinion was consistent with the medical evidence. *Robinson*, 366 F.3d at 1082.

The ALJ found substantial medical evidence that contradicted Dr. Switzer's opinion. As the ALJ noted, during Plaintiff's March 2016 emergency-room visit, he displayed a normal range of motion, other than "self-reported tenderness." AR 27. And his x-rays showed only "minimal degenerative changes." *Id.* During his first visit to Dr. Switzer, Plaintiff had a normal range of motion to his neck, back, and extremities, and walked with a normal gait. *Id.*; *see id.* at 384-85. Again, only Plaintiff's subjective complaints regarding his extreme pain appeared to counter this conclusion. *See id.*

The ALJ noted that Plaintiff's most recent MRI showed minimal to mild degenerative changes, and mild central canal stenosis at L3/L4/L5. *Id.* at 28. The ALJ noted the November 2016 physical consultative examination also showed normal range of motion except for Plaintiff's back, shoulders and hips. *Id.*

The ALJ also considered other factors, including Plaintiff's subjective complaints. *See Robinson*, 366 F.3d at 1082 (listing "other factors brought to the ALJ's attention"); *Oldham*, 509 F.3d at 1258. The ALJ discounted Plaintiff's credibility and considered his activities of daily living, which include

---

doubt to Plaintiff with respect to his treatment history with Dr. Switzer. *Id.* at 28.

driving, providing care for his grandson and walking him to school, leaving his home unaccompanied, and socializing with friends and family. AR 26, 29. The court finds the ALJ gave "specific, legitimate reasons" for his decision to give Dr. Switzer's RFC assessment little weight. *Arterberry*, 743 F. App'x at 229.

Plaintiff maintains that "Dr. [David] Fell's opinion that [Plaintiff's] lumbar spine MRI scan findings indicated problems severe enough to warrant serious surgical intervention was consistent with and supported Dr. Switzer's later opinion that similar more recent lumbar MRI scan findings supported his opinion that Mr. Long suffered significant work-related limitations." Doc. 19, at 9. Plaintiff argues Drs. Fell and Switzer's opinions deserved more weight than the state agency doctors. *Id.*

The ALJ considered Dr. Fell's examinations and MRI review.[4] The ALJ noted Plaintiff's complaints of worsening back pain during his visits to Dr. Fell, and heard testimony on Plaintiff's decision not to undergo surgery. AR 27, 43. The ALJ also noted a 2010 consultative examination that showed a full range of motion in all extremities but with limitation in range of motion in his back and knee, both secondary to complaints of pain. *Id.* at 27. The ALJ noted Plaintiff received treatment off and on through 2009. *Id.* And, that in

---

[4] Plaintiff visited Dr. Fell in 2007 reporting daily low back pain. AR 288-92. In 2010, a different ALJ denied Plaintiff's applications for SSI and DIB. *Id.* at 66. The record does not indicate Plaintiff appealed that decision.

11

November 2015, Plaintiff denied any back pain, walked with a normal gait, and had intact strength and function of all extremities. *Id.*

The ALJ gave great weight to the state agency physicians' opinions, noting their reliance on "the lack of objective evidence supporting the allegations, the relatively normal physical examinations, and the inconsistencies between the claimant's allegations and the medical evidence." AR 28. State agency medical consultants are highly qualified experts in Social Security disability evaluation. *Martinez v. Comm'r,* No. 18-1218, 2019 WL 2714608, at *4 (10th Cir. June 28, 2019). These consultants reviewed Plaintiff's medical record and deemed Plaintiff capable of performing medium work. AR 28. The ALJ found Plaintiff's "allegations warrant the benefit of the doubt," and assessed light work with restrictions. *Id.* at 25.

Plaintiff also argues that under *Parker v. Comm'r*, 772 F. App'x 613, 616-17 (10th Cir. 2019) the ALJ committed reversible legal error. Doc. 24, at 2-3. In *Parker*, the ALJ gave significant and great weight to two agency doctors' opinions, but "fail[ed] to explain the omission of the pertinent limitations" from the RFC, the court reversed. 772 F. App'x at 615-17. Here, the ALJ discounted the weight given to the treating physician's opinion, acknowledged his duty to consider the regulatory factors in 20 C.F.R. 21 404.1527(c), and discussed these factors. AR 26-27; 28-29. The ALJ's RFC "finding is consistent with the [state agency consultants'] opinion[s], with the exception of limitation[s] *favorable* to

[Plaintiff] that the [state agency consultants] did not propose . . . ." *Martinez*, 2019 WL 2714608, at *4  The ALJ did not commit legal error.

IV. **Conclusion.**

The court AFFIRMS the Commissioner's decision.

ENTERED this 3rd day of September, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE